260 P.3d 299

The YAVAPAI–APACHE NATION, a federally recognized Indian Tribe of Arizona; and The Fort McDowell Yavapai Nation, a federally recognized Indian Tribe of Arizona, Plaintiff/Appellant,

v.

Sandra FABRITZ–WHITNEY, in her capacity as acting Director of the Arizona Department of Water Resources; Arizona Department of Water Resources, an agency of the State of Arizona; Cliff J. Vannell, acting in his capacity as Director of the Arizona Office of Administrative Hearings; Arizona Office of Administrative Hearings; State of Arizona; City of Prescott, Arizona, an Arizona municipal corporation; Town of Prescott Valley, Arizona, an Arizona municipal corporation, Defendants/Appellees.

No. 1 CA–CV 10–0255.

Court of Appeals of Arizona, Division 1, Department C.

July 21, 2011.

Montgomery & Interpreter PLC, By Susan B. Montgomery, Robin L. Interpreter, Scottsdale, Attorneys for Plaintiff/Appellant Yavapai–Apache Nation.

Arizona Department of Water Resources, By Janet L. Ronald, Kenneth C. Slowinski, Nicole D. Klobas, Phoenix, Attorneys for Defendants/Appellees Sandra Fabritz–Whitney/Arizona Department of Water Resources.

Maguire & Pearce, PLLC, By Rita P. Maguire, Michael J. Pearce, Phoenix, and Perkins Coie LLP, By Paul F. Eckstein, Amelia M. Gerlicher, Phoenix, Co–Counsel Attorneys for Defendants/Appellees City of Prescott and Town of Prescott Valley.

## OPINION

OROZCO, Judge.

¶ 1 The Yavapai–Apache Nation (the YAN) appeals the trial court's partial judgment, construing Arizona Revised Statutes (A.R.S.) section 45–578.B (Supp. 2010) and upholding the statute against facial and as applied constitutional challenges.[1] For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The genesis of this case occurred in October 2007, when the City of Prescott (Prescott) applied to the Arizona Department

---

1. We cite to the current version of applicable statutes where no revisions material to this decision have since occurred.

of Water Resources (ADWR)[2] for modification of its assured water supply[3] designation (the Prescott Proposal), seeking to include additional water drawn from the Big Chino sub-basin of the Verde River groundwater basin.

¶ 3 ADWR ultimately, and in large part, approved the Prescott Proposal. However, during the administrative review process, ADWR determined that several parties with objections (collectively, the Objectors) to the Prescott Proposal lacked standing to be heard. As a consequence the Objectors' administrative appeals were not considered.

¶ 4 Various plaintiffs filed suit against ADWR, Prescott, and other defendants (collectively, Defendants), claiming that the Prescott Proposal would adversely affect the plaintiffs' water rights and other interests in the Verde River. They also challenged ADWR's determination that they lacked standing to participate as objectors to the Prescott Proposal during the administrative review process.

¶ 5 The YAN and Fort McDowell Yavapai Nation (collectively, the Nations) were among the Objectors during administrative review and filed motions to intervene in the superior court action. The court granted the motions and allowed permissive intervention. The Nations also asserted that they were improperly denied standing to object during administrative review of the Prescott Proposal.

¶ 6 The collective plaintiffs, including the Nations, sought a preliminary injunction requiring ADWR to admit them as parties to the administrative proceedings concerning the Prescott Proposal. The trial court denied the injunctive relief.

¶ 7 The Nations (and other plaintiffs) then amended their complaints, adding two more counts that are not before us in this appeal.[4] The amended complaints also added other plaintiffs that are not parties to this appeal.

¶ 8 Defendants moved for summary judgment on the counts that challenged ADWR's interpretation and application of the standing requirement in A.R.S. § 45–578.B, as well as the constitutionality of that statute. The Nations filed cross-motions for partial summary judgment.

¶ 9 The trial court granted partial judgment in favor of Defendants and concluded that: (1) with respect to administrative review of applications such as the Prescott Proposal, A.R.S. § 45–578.B limits the pool of potential objectors to residents of the active management area (AMA) where the water is to be used; (2) this limitation does not run afoul of constitutional notions of due process or equal protection because (a) there is a rational basis for having such a limitation in the statute, and (b) plaintiffs have adequate, alternative forums in which to protect their water rights; and (3) because the law is constitutional and was correctly applied in this case, there are no grounds for a mandatory injunction requiring ADWR to "deviate from the statutory mandate."

¶ 10 The plaintiffs filed notices of appeal; however, all resulting appeals with the exception of this one were dismissed by order of this Court.[5] Because the Fort McDowell Yavapai Nation did not file an opening brief, the YAN is the only remaining appellant.

¶ 11 We have jurisdiction in accordance with Article 6, Section 9, of the Arizona Constitution, and A.R.S. § 12–2101.B. (2003).

2. Prescott applied to ADWR for the assured water supply designation modification. The Town of Prescott Valley is involved via an intergovernmental agreement between Prescott and the Town of Prescott Valley.

3. "Assured water supply" is defined, in part, as meaning that "[s]ufficient groundwater, surface water or effluent of adequate quality will be continuously available to satisfy the water needs of the proposed use for at least one hundred years." A.R.S. § 45–576.J (Supp.2010).

4. The amended complaint in intervention of the Fort McDowell Yavapai Nation, but not that of the YAN, also challenged the constitutionality of A.R.S. § 45–555.E (2003). This section was amended in 2010; thus, we cite to the version challenged and not the current version. This matter is also not before us on appeal.

5. The original appellant, Salt River Project Agricultural Improvement and Power District, was dismissed from the appeal upon stipulation of the parties.

## STANDARD OF REVIEW

¶ 12 "Summary judgment is appropriate 'if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.'" *Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 151, ¶ 15, 235 P.3d 1030, 1034 (2010) (quoting *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 14, 38 P.3d 12, 20 (2002)). "We review de novo a grant of summary judgment, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). We also determine "whether the trial court erred in application of the law." *Guo v. Maricopa Cnty. Med. Ctr.*, 196 Ariz. 11, 15, ¶ 16, 992 P.2d 11, 15 (App.1999).

¶ 13 "Because the interpretation of an Arizona statute involves legal rather than factual questions, we are not bound by the trial court's conclusions of law, and conduct a *de novo* review of the applicable statutes and regulations." *Libra Group, Inc. v. State*, 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

¶ 14 "A statute's constitutionality is a matter of law analyzed de novo by this court...." *Ariz. Dep't of Pub. Safety v. Superior Court*, 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997). "In deciding these questions, we note that there is a presumption that statutes are constitutional unless shown to be otherwise." *Chevron Chem. Co. v. Superior Court*, 131 Ariz. 431, 438, 641 P.2d 1275, 1282 (1982). "We will not declare an act of the legislature unconstitutional unless we are satisfied beyond a reasonable doubt that the act is in conflict with the federal or state constitutions." *Id.* "[T]he party challenging [a statute's] validity bears the burden of establishing that the legislation is unconstitutional; any doubts are resolved to the contrary." *Ariz. Dep't of Pub. Safety*, 190 Ariz. at 494, 949 P.2d at 987.

## DISCUSSION

¶ 15 The purpose of the Groundwater Management Act (the GMA) is to "protect the state's economy and welfare, and to 'provide a framework for the comprehensive management and regulation of the withdrawal, transportation, use, conservation and conveyance of rights to use the groundwater in this state.'" *Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 148, ¶ 3, 91 P.3d 990, 991 (2004) (quoting A.R.S. § 45–401.B). "Responsibility for these critical matters was placed in the hands of ADWR, A.R.S. § 45–102(A) (2003), headed by a Director, A.R.S. § 45–102(B), with sweeping 'general control and supervision' of groundwater, A.R.S. § 45–103(B) (2003)." *Id.*

¶ 16 To further its purpose, the GMA established AMAs to regulate water usage within certain key areas of Arizona. *See generally* A.R.S. §§ 45–411 to –421 (2003). Management goals and plans were put into place for each AMA. *See generally* A.R.S. §§ 45–561 to –578 (2003). As part of the management scheme, the GMA requires ADWR to designate which cities and towns, located within an AMA, have an assured water supply. A.R.S. § 45–576.E (Supp. 2010). The GMA establishes criteria by which ADWR evaluates applications to determine whether an assured water supply exists. *See* A.R.S. § 45–576.J; *see also* Arizona Administrative Code, Title 12, Chapter 15, Article 7. This procedure is aimed at facilitating development while preventing the over-allocation of groundwater within an AMA. *See* A.R.S. § 45–576.B (allowing subdivision of property only upon showing that subdivider has certificate of assured water supply or the surrounding city is designated as having an assured water supply).

¶ 17 Separate from the GMA, Title 45 also provides a process for adjudicating water rights in superior court. *See generally* A.R.S. §§ 45–251 to –264 (2003). "The purpose of a comprehensive general stream adjudication is to determine 'the nature, extent and relative priority of the water rights' of all who use the water of a 'river system and source.'" *In re the Gen. Adjudication of All Rights to Use Water in the Gila River Sys. and Source*, 195 Ariz. 411, 414, ¶ 2, 989 P.2d 739, 742 (1999) (quoting A.R.S. §§ 45–252.2, –252.A).

¶ 18 Thus, Arizona's water code provides separately for water rights adjudication,

which is intended to allocate water rights, and for water usage management, which is meant to regulate water usage. The GMA provides the overarching framework for water usage management, creating a system of AMAs with corresponding management goals and plans for regulating water usage within each AMA. A component part of that system is the process a city must employ to obtain a designation from ADWR that it has an assured water supply. This process does not allocate water rights or establish priorities; but rather, it involves an analysis of water rights that are already in place. With this background in mind, we now turn to the issues.

### A.R.S. § 45–578.B

¶ 19 The trial court held that the language of A.R.S. § 45–578.B plainly and unambiguously limits the pool of potential objectors during administrative review of assured water supply designation applications, such as the Prescott Proposal, to residents of the AMA where the water is to be used.

¶ 20 "In interpreting a statute, we first look to the language of the statute itself." *Lincoln v. Holt*, 215 Ariz. 21, 24, ¶ 7, 156 P.3d 438, 441 (App.2007) (citations and quotation marks omitted). "Our chief goal is to ascertain and give effect to the legislative intent." *Id.* (citations and quotation marks omitted). "In construing statutes we give full effect to the intent of the lawmaker, and each word, phrase, clause and sentence must be given meaning so that no part will be void, inert, redundant or trivial." *Id.* at ¶ 9 (citations and quotation marks omitted). "[A] statute should be construed in conjunction with other statutes that relate to the same subject or purpose. . . ." *Johnson v. Mohave Cnty.*, 206 Ariz. 330, 333, ¶ 11, 78 P.3d 1051, 1054 (App.2003). "Words are given their ordinary meaning unless the context of the statute requires otherwise." *HCZ Constr., Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 364, ¶ 10, 18 P.3d 155, 158 (App.2001) (citations omitted).

¶ 21 Section 45–578.A reads, in part, "The director shall give notice of the application for a certificate of assured water supply once each week for two consecutive weeks in a newspaper of general circulation in the active management area in which the applicant proposes to use water." Section 45–578.B reads, in part, "Notice pursuant to subsection A of this section shall state that objections to the issuance of the certificate *may be filed by residents of the active management area,* in writing, with the director within fifteen days after the last publication of notice." (Emphasis added.)

¶ 22 The YAN argues on appeal that use of the word "may" in paragraph B permissively allows residents of the AMA to file objections, but does not require ADWR to bar objections filed by non-residents of the AMA. The YAN posits that reading the statute otherwise, and limiting the pool of potential objectors to AMA residents only, runs counter not only to legislative intent, but also to the purpose of the law, both of which are to safeguard "Arizona's water supply for the benefit of all Arizonans." That is, due to the broad purpose of the statutory scheme, of which A.R.S. § 45–578.B is a part, the residency language of that statute should not be read as a limitation because the proposal under consideration could generate effects that spread beyond the boundaries of a particular AMA, and such a reading of the statute would deprive interested parties of a voice during administrative review.

¶ 23 Defendants counter that the language of the statute is plain and unambiguous. Defendants argue that to adopt the YAN's view would render the residency language of the statute meaningless because it would leave the ability to object during administrative review without limit. If the statute is not read as a geographical limitation on the ability to file an objection, then the residency language of the statute would be superfluous.

¶ 24 Whereas in a general stream adjudication, potential claimants may be any "water users upon a river system and source," A.R.S. § 45–252.A, during administrative review of assured water supply designation applications, the standing to object is not so broad. *See* A.R.S. § 45–578.B. A plain reading of A.R.S. § 45–578.B provides AMA residents a right to object during the assured water supply determination; it does not pro-

vide a similar right to non-residents. To read into the statute such a right for non-residents would render the language pertaining to residents meaningless. *See Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 160 Ariz. 66, 68–69, 770 P.2d 370, 372–73 (App.1988) ("Arizona Water contends that the category of any other users must include private water companies which own wells inside their service areas *because they are not specifically excluded* in that category. Under that interpretation, however, the first two categories are rendered meaningless." (emphasis added)).

¶ 25 While it is true that non-residents are not explicitly barred from objecting, more significant is the fact that residents are explicitly imbued with the right to object. If this right existed across the board for residents and non residents alike, there would be no need to make specific reference to AMA residents. Because we must read "each word, phrase, clause and sentence ... so that no part will be void, inert, redundant or trivial," *Lincoln*, 215 Ariz. at 24, ¶ 9, 156 P.3d at 441, our construction of the residency language in the statute must operate to exclude non-residents.

¶ 26 This reading comports both with statutory rules of construction and with the structure of Arizona's water code, which provides separately for water usage management and water rights adjudication. That is, not only does our construction give effect to the full language of the statute, but it is also consistent with the purpose of the GMA—a purpose the legislature chose to serve by establishing a system of AMAs and putting into place water management procedures that govern *within* each AMA.

¶ 27 The YAN further argues that ADWR's reading of the statute is not entitled to deference because, unlike the typical assured water supply designation modification, which involves water that is both extracted

and used within the same AMA, the Prescott Proposal seeks to include additional water drawn from *outside* of the AMA where the water is to be used. Accordingly, argues the YAN, even if the statute under typical circumstances properly limits objections to those of AMA residents, such a limitation is inappropriate in this instance.[6]

¶ 28 ADWR counters that despite subsequent amendments to the GMA, which pertain to extraction of groundwater from outside an AMA, *see infra* at ¶ 43, the original language of A.R.S. § 45–578.B has remained unchanged since its inception. Accordingly, argues ADWR, the legislature has reaffirmed ADWR's interpretation of the statute, restricting objections to those of AMA residents, which has been consistent throughout the life of the GMA. ADWR maintains that because the focus of administrative review is on water usage within an AMA—and not allocation of water rights—it is immaterial to A.R.S. § 45–578.B's construction whether the water being used by the applicant is drawn from within or from outside of the AMA.

¶ 29 ADWR's "interpretation should be given great weight in the absence of clear statutory guidance to the contrary." *Ariz. Water Co.*, 208 Ariz. at 154, ¶ 30, 91 P.3d at 997. "Indeed, ADWR is 'precisely the type of agency to which deference should presumptively be afforded.'" *Id.* at 155, ¶ 31, 91 P.3d at 998 (quoting *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37, 102 S.Ct. 38, 70 L.Ed.2d 23 (1981)). "The legislature mandated that the Director be an expert in the field," and gave him "broad powers to achieve groundwater conservation." *Id.* Accordingly, "the Director's expert interpretation deserves considerable deference by the judiciary." *Id.*

¶ 30 Indeed, since its inception, the legislature has amended the GMA provisions pertaining to groundwater extraction from outside an AMA; however, the residency

**6.** The YAN argues that ADWR arbitrarily accepted objections from some non-residents but not others. ADWR counters that several non-resident entities were permitted to object during the administrative review process because these entities asserted they had members who were residents of the AMA, and the associational standing requirements were satisfied. We agree. *Armory*

*Park Neighborhood Ass'n v. Episcopal Cmty. Serv.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985). Because the YAN did not make a similar assertion as part of its initial objection, we need not address whether it would have satisfied the three-part test for associational standing. As such, we do not address whether ADWR acted arbitrarily on these grounds.

language in A.R.S. § 45–578.B has remained consistent throughout the life of the statute. This fact implies that ADWR's reading of the law is the correct one, and that the legislature has declined the opportunity to clarify otherwise.

¶ 31 Moreover, as ADWR correctly points out, the focus of the administrative review process regarding applications such as the Prescott Proposal is on water usage within an AMA, *see supra* at ¶¶ 15–16. Accordingly, the source of the water being used is inapposite to the standing determination. The location where the water is to be used determines standing to object during administrative review of assured water supply designation applications. Thus, the trial court's partial judgment, upholding ADWR's construction of A.R.S. § 45–578.B, is affirmed.

### Equal Protection Clause

■ ¶ 32 The trial court concluded that its reading of A.R.S. § 45–578.B, limiting the pool of potential objectors to residents of the AMA where the water is to be used, does not violate equal protection because (a) there is a rational basis for having such a limitation in the statute, and (b) plaintiffs have adequate, alternative forums in which to safeguard their water rights. Specifically, the trial court found that there is a rational basis for the residency limitation in the statute; namely, "the interests of the local residents in the assured water supply determination in the [AMA] where the water is to be used." The trial court also found that the YAN may protect its water rights in the "Arizona general stream adjudication proceedings currently pending in Maricopa County Superior Court Cause Nos. W–1 through W–4 consolidated."

¶ 33 On appeal, the YAN argues that ADWR's reading of the statute violates equal protection by denying non-residents "that have a valid interest in the proceeding" equal access to the courts. Accordingly, the YAN argues that the rational basis test is inappropriate for analyzing the constitutionality of A.R.S. § 45–578.B. Rather, the YAN posits that equal access to the courts is a fundamental right requiring strict scrutiny.

¶ 34 Defendants counter that the YAN has not been denied access to the courts merely because it was denied the right to object during administrative review of the Prescott Proposal. Rather, Defendants posit that the administrative process does not determine the water rights of non-residents, nor does it bind them in any way. As such, Defendants maintain that as a non resident, the YAN has no valid interest in administrative review of water usage within the Prescott AMA, and that where water rights allocation is concerned; the YAN "does have access to the courts, albeit in a different forum."

¶ 35 As discussed above, *see supra* ¶¶ 15–16, the focus of administrative review regarding applications such as the Prescott Proposal is on the internal water usage of an AMA. The YAN's rights are not affected because administrative review does not determine water *rights*. Rather, administrative review of the Prescott Proposal pertains to regulation of water *usage* within the AMA. Thus, as a non-resident, the YAN is not interested in nor bound by ADWR's determination. Moreover, the YAN has available to it an alternate forum in which to litigate its water *rights* in the general stream adjudication, *see supra* ¶ 17. Thus, barring the YAN from objecting during administrative review of the Prescott Proposal does not deny it court access.

¶ 36 Nevertheless, the YAN challenges reliance on *Cherry v. Steiner*, 543 F.Supp. 1270 (D.Ariz.1982), *aff'd* 716 F.2d 687 (9th Cir. 1983), *cert. denied*, 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 190 (1984), as a guide for ascertaining the correct standard of review for our equal protection analysis. In *Cherry*, the plaintiffs "argue[d] that the classification of certain areas as AMA's is discriminatory." *Id.* at 1279. The federal district court, applying the rational basis test, reasoned that it is "[well-documented,] the existence of a sound hydrological basis for the boundaries which establish AMA's," and concluded that "the equal protection clause does not apply to the differing treatment accorded geographical areas." *Id.* at 1280 (citing *McGowan v. Maryland*, 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

¶ 37 Because the issue in this case is not access to the courts, but instead the internal water usage management of an AMA, we find the YAN's attempt to distinguish *Cherry* unpersuasive. *Cherry* prescribes the correct standard because, as in that case, the issue here concerns a distinction based on geography. *See id.* at 1280. Thus, the question whether there is a rational basis for a geographical distinction is the appropriate test. We will find an equal protection violation "only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *Kenyon v. Hammer,* 142 Ariz. 69, 78, 688 P.2d 961, 970 (1984) (quoting *McGowan,* 366 U.S. at 425, 81 S.Ct. 1101).

¶ 38 The YAN argues that even if the trial court applied the correct standard, it nevertheless erred in finding a rational basis for distinguishing between residents and non-residents. Specifically, the YAN argues that the state's interest in managing the groundwater supplies of Arizona does not justify discrimination against non-residents of an AMA by prohibiting them from objecting during administrative review of applications such as the Prescott Proposal. Rather, the YAN posits that allowing non-residents to object would better serve the purpose of the GMA by giving a voice to additional parties with a potential interest in the matter.

¶ 39 Defendants counter that there is a rational basis for distinguishing between residents and non-residents during administrative review of applications such as the Prescott Proposal, and that the YAN failed to meet its burden proving otherwise. Specifically, Defendants contend that because the statutes and rules by which applications are evaluated were not intended to, and do not in fact, address the availability of water for non-residents of the AMA in which the water is to be used; only residents are permitted to file objections to the application. Thus, according to Defendants, there is a rational basis for distinguishing residents and non-residents for purposes of A.R.S. § 45–578.B because the focus of administrative review is on water usage within the AMA and not the source of the water being used.

¶ 40 Because there is a rational basis for geographically distinguishing AMAs as set forth by the GMA, *Cherry,* 543 F.Supp. at 1280, there must also be a rational basis for distinguishing residents from non-residents of an AMA when it comes to administrative review of assured water supply designation applications that will govern water usage within the AMA. As discussed above, *see supra* ¶¶ 15–16, administrative review looks only to internal regulation of water usage within an AMA; it does not look to water usage outside the AMA, nor does it grant actual water rights. Administrative review examines whether water is available within the AMA under established criteria set forth by statute and rules. Thus, there is a rational basis for distinguishing between residents and non-residents during this process because non-residents have no interest in how the water is to be used.

¶ 41 Lastly, the YAN argues that even if the rational basis test was once satisfied, the GMA "has been so altered by amendments [that] it no longer furthers the statute's original purpose," which was to focus administrative review on the internal management of an AMA. That is, with the 1991 amendments to the GMA allowing the extraction and transport of water from outside an AMA, *see* 1991 Ariz. Sess. Laws, ch. 212, § 28 (1st Reg. Sess.), the rational basis for focusing the administrative inquiry on activity occurring within an AMA accordingly disappeared, rendering the trial court's judgment in this case arbitrary and capricious.

¶ 42 Defendants counter that the GMA has always authorized extraction and transportation of water away from a groundwater basin located outside an AMA; however, under the 1980 GMA, such activity was unregulated and subject only to the payment of damages. Defendants argue that subsequent amendments to the GMA more narrowly defined the potential sources for such groundwater extraction. Accordingly, these amendments acted to limit, not expand, the use of groundwater supplies outside of an AMA. As such, the 1991 amendments to the GMA do not vitiate the rational basis for having a residency restriction on the ability to object to an

application such as the Prescott Proposal during administrative review.

¶ 43 We agree with Defendants. The GMA, as originally passed in 1980, authorized the extraction and transportation of groundwater away from a groundwater basin outside an AMA. For example, A.R.S. § 45–544 (1980) provided, "In areas outside of [AMAs], groundwater may be transported ... away from a groundwater basin, subject to payment of damages." The 1991 amendments, adding A.R.S. §§ 45–551 to –558 (Article 8.1), did not affect the overarching structure of the GMA. Rather, Article 8.1 prohibited the extraction of groundwater from a source outside an AMA for transportation to the AMA, unless specifically authorized. A.R.S. § 45–551.B. Article 8.1 provided several specific exceptions to this general prohibition on extracting groundwater from a source outside an AMA. *See generally* A.R.S. §§ 45–552 to –555. Among these exceptions is Prescott's right to withdraw and transport groundwater from the Big Chino sub-basin of the Verde River groundwater basin, as defined by A.R.S. § 45–555.E.

¶ 44 The YAN's argument is premised on the notion that Article 8.1 authorized groundwater extraction that was not previously allowed under the GMA. Because this is not true, the YAN's argument fails, and the rational basis for using geographical distinctions in managing Arizona's water resources remains intact. The addition of Article 8.1 does not authorize any new activity that was not previously authorized under the GMA as originally passed. Article 8.1 was not added to expand but rather to limit the potential to extract water from an outside water source for transport to an AMA. Put another way, under the GMA, transportation of groundwater into an AMA from a groundwater basin outside the AMA was previously allowed by anyone willing to pay damages; Article 8.1 now limits that activity to only specifically defined exceptions. Thus, there remains a rational basis for the residency distinction drawn by A.R.S. § 45–578.B and we find no equal protection violation.

### Due Process Clause

¶ 45 The trial court, using the same rationale it applied in its equal protection

analysis, also concluded that the residency requirement of A.R.S. § 45–578.B does not violate the YAN's right to due process. Specifically, the trial court found adequate, alternative forums in which the YAN could challenge Prescott's water usage; and as such, application of the statute in this case does not deny the YAN due process of law.

¶ 46 The YAN argues that the trial court's interpretation of A.R.S. § 45–578.B deprives it of a property interest without a meaningful opportunity to be heard. Specifically, the YAN argues both that it has a "prior, perfected and vested property interest [in] the waters of the Verde River," and that denying it the right to object during administrative review deprives the YAN of its due process right to a hearing. That is, because approval of the Prescott Proposal allows Prescott to begin developing the necessary infrastructure to implement its plan, requiring the YAN to wait until after the Prescott Proposal is approved before seeking relief falls short of the "meaningful time and manner" requirements of due process.

¶ 47 Defendants' counter-argument is twofold: (1) a conflict between Prescott and the YAN over the waters of the Verde River, arising out of the Prescott Proposal, is speculative; and (2) regardless, ADWR is not empowered to resolve such a dispute. Thus, even if the YAN were deprived of a property interest, which ADWR maintains that it has not been, an alternate forum is not merely available; it is the only venue in which the YAN could assert its claims given ADWR's inability to address them. The YAN agrees that federal court, or the general stream adjudication, are both potential alternate forums to assert its claims. As such, ADWR argues that the YAN has neither been deprived of a right to property nor a right to a hearing.

¶ 48 "Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979). However, to trigger this due process requirement, the party requesting to be heard must have an interest that will be

adjudicated in a "proceeding which is to be accorded finality." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

¶ 49 When general adjudication of water rights is already pending, and a party has been noticed as a claimant in the action, that general adjudication is the exclusive forum in which the noticed party may adjudicate the water rights at issue in the action. *Gabel v. Tatum,* 146 Ariz. 527, 529, 707 P.2d 325, 327 (App.1985) ("Subject matter jurisdiction abates when another county has already assumed jurisdiction in the same matter. While *In Re Salt River* is not the same action as the present case, it is inclusive of all issues raised in appellants' complaint." (citation omitted)). That is, once a general adjudication is pending that involves particular water rights parties to the case may not litigate the same water rights in another action. *Id.*

¶ 50 Respecting the YAN's property rights and assuming without deciding that the YAN has a vested interest in the Verde River (a matter for resolution in the general stream adjudication), it is not clear whether or to what extent such rights will be affected by the Prescott Proposal. This is so because the YAN's water rights were not at issue during administrative review of the Prescott Proposal. Thus, it cannot be said that the YAN has been deprived of its property.

¶ 51 Respecting the YAN's right to a hearing, not only is an alternate forum available for the YAN to adjudicate its water rights, but also, the alternate forum is the only forum in which the YAN may adjudicate its water rights to the Verde River. *Gabel,* 146 Ariz. at 529, 707 P.2d at 327. ADWR lacks both the requisite statutory authority to determine the YAN's or Prescott's water rights, as well as subject matter jurisdiction, which is vested in the superior court via the general stream adjudication of water rights to the Gila River system and source. Thus, it cannot be said that the YAN has been denied its right to a hearing.

¶ 52 In view of the existence of an alternate forum, the YAN need not participate in administrative review in order to protect its water rights in court. Allowing the YAN to do so would force ADWR to exceed the scope of its mandate. As such, the YAN need not wait until administrative review concludes before challenging Prescott's water extraction from the Verde River—a right belonging to Prescott provided by statute, A.R.S. § 45–555. Thus, the YAN has neither been deprived of a property interest, nor due process of law.

## CONCLUSION

¶ 53 For the foregoing reasons, we affirm the trial court's grant of partial judgment in favor of Defendants and the denial of YAN's cross-motion for summary judgment. The YAN, Prescott and the Town of Prescott Valley all requested attorneys' fees on appeal and in the proceedings below, without citing any authority as a basis for the request. We accordingly deny all requests for attorneys' fees. *See Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 172, ¶ 25, 7 P.3d 973, 978 (App.2000) (holding that requests for attorneys' fees will be denied on appeal absent supporting authority).

CONCURRING: DONN KESSLER, and PHILIP HALL, Judges.