JONES, Judge:
*982 ¶ 1 Compassionate Care Dispensary, Inc. (CCD) appeals entry of summary judgment in favor of the Arizona Department of Health Services (the Department) on CCD's complaint for declaratory judgment and mandamus relief. The Department cross-appeals the denial of its motion for sanctions.
¶ 2 CCD argues the evidence establishes that the Department acted arbitrarily and capriciously in interpreting the Arizona Medical Marijuana Act (AMMA) and corresponding regulations in a manner that permitted a competitor to participate in a lottery for a medical marijuana dispensary registration certificate without first obtaining a conditional use permit (CUP). The interpretation and application of these provisions present a question of first impression. We hold that neither the statutes and regulations, nor the applicable municipal code, require applicants to obtain a CUP before applying for a dispensary registration certificate, and the Department did not act arbitrarily and capriciously in its application of the law. We further hold that the "sworn statement" required to accompany a dispensary registration application need not take any particular form so long as it impresses upon the signatory the importance of telling the truth.
¶ 3 Because we find no error in the trial court's resolution of the issues presented on summary judgment and in the Department's motion for sanctions, we affirm.
FACTS[2] AND PROCEDURAL HISTORY
¶ 4 In 2010, Arizona voters passed Proposition 203, now codified as the AMMA, Ariz. Rev. Stat. (A.R.S.) §§ 36-2801[3] to -2819, to allow for the medicinal use of marijuana within the state. See White Mountain Health Ctr., Inc. v. Maricopa Cty. , 241 Ariz. 230, 233, ¶ 3, 386 P.3d 416, 419 (App. 2016). The AMMA requires non-profit medical marijuana dispensaries to register with the Department-the agency tasked with implementing and administering the AMMA. See A.R.S. §§ 36-2803, -2804(A). A prospective dispensary's application for a registration certificate must contain, among other things, documentation that the proposed dispensary location complies with local zoning restrictions. See A.R.S. § 36-2804(B)(1)(d) ; Ariz. Admin. Code (A.A.C.) R9-17-304(C)(5)-(6).
¶ 5 Initially, the A.A.C. authorized the Department allocate only one dispensary registration certificate for each Community Healthcare Analysis Area (CHAA). See A.A.C. R9-17-302 (2011).[4] If the Department received more than one application for a single CHAA, it would randomly select a qualifying applicant according to the priority set forth in A.A.C. R9-17-302(B).
¶ 6 In May 2012, CCD applied to operate a dispensary at 1600 East Second Street in the City of Winslow (the City), within the Winslow CHAA. CCD established its compliance with applicable zoning restrictions by providing: (1) a "Sworn Statement of Compliance with Local Zoning Restrictions," executed by an officer and board member of CCD; (2) a *983 copy of a CUP for the Second Street location issued by the City; and (3) a Department form entitled "Documentation of Compliance with Local Jurisdiction Zoning" executed by the City's Principal Planner.
¶ 7 Two other entities, Green Cross Medical, Inc. (GCM) and The Medicine Room, L.L.C. (TMR), also submitted applications for the Winslow CHAA. Each application was accompanied by the same type of Department form, again executed by the City's Principal Planner, and a statement of compliance executed by the companies' principal officers. The Department determined all three applications were substantively complete in June 2012 and scheduled a lottery in August 2012 to determine which entity would be awarded the certificate for the Winslow CHAA.
¶ 8 In the meantime, CCD notified the Department it believed GCM's and TMR's applications had been errantly accepted because the proposed locations were not in compliance with City zoning ordinances. At the same time, the City Attorney notified the Department, GCM, and TMR that City ordinances require applicants to obtain a CUP before the City could certify a proposed dispensary location as compliant with zoning restrictions. The City Attorney explained the City's Principal Planner had issued letters of compliance for GCM and TMR by mistake, the Planner believing only that he was affirming the proposed dispensary locations were, generally, in the proper zone. The City Attorney confirmed the proposed locations were in fact "in the commercial zone, and would be ... appropriate location[s] for a medical marijuana dispensary." However, neither GCM nor TMR had yet applied for, let alone received, a CUP.
¶ 9 In July 2012, the Department notified GCM and TMR their applications were not substantively complete because they had not obtained a CUP from the City and therefore were not in compliance with local zoning ordinances. After further discussion with the City Attorney, the Department advised it did not require a CUP at the application stage. The Department explained: "DHS has formulated a two-step process for applicants and does permit them a period of time from when they are awarded a dispensary registration certificate to receive actual documentation (such as certificates of occupancy or conditional use permits) authorizing their occupancy as a dispensary." The Department assured the City that, after a certificate was issued, "DHS will require the applicant to be in full compliance [with the City's zoning and business requirements] before [a dispensary] is allowed to open." The City Attorney admitted he had been unaware of the two-step process but maintained his position that the City independently required "both commercial zoning and a conditional use permit be granted for a marijuana dispensary to be located in the city limits."
¶ 10 Based upon its "two-step process" analysis, the Department accepted the City's prior assurances that the proposed locations would be appropriate for a medical marijuana dispensary and re-designated GCM's and TMR's applications as substantively complete. However, GCM was unable to demonstrate it had the requisite financial backing and lost its preference for selection. See A.A.C. R9-17-302(B). The Department conducted the lottery as between TMR and CCD, and, as the randomly chosen applicant, TMR was awarded a dispensary registration certificate for the Winslow CHAA.
¶ 11 In December 2012, CCD filed a complaint alleging the Department acted arbitrarily and capriciously in permitting TMR to participate in the lottery and sought: (1) a declaration that the Department improperly accepted the application of TMR; (2) a writ of mandamus ordering the Department to void the lottery results and award a dispensary registration certificate to CCD; and (3) an award of damages, attorneys' fees, and costs.[5] After discovery, both parties moved for summary judgment, and the Department sought sanctions against CCD for maintaining a frivolous claim. After briefing and oral argument, the trial court entered judgment in favor of the Department but denied its *984 motion for sanctions. CCD timely appealed, and the Department timely cross-appealed. We have jurisdiction over both appeals pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
I. Summary Judgment
A. The Department Did Not Violate Rule 56(c)(3).
¶ 12 CCD argues the trial court erred in granting summary judgment to the Department because, it contends, the Department did not submit a separate statement of facts in the form prescribed by Arizona Rule of Civil Procedure 56(c)(3). That rule requires a party filing or opposing a motion for summary judgment to file "a statement separate from the supporting memorandum, [setting forth] the specific facts relied on in support of the motion." Ariz. R. Civ. P. 56(c)(3). We have reviewed the Department's statement of facts and find it contains concise, numbered paragraphs identifying specific relevant events, in chronological order, and referencing supporting portions of the record and exhibits, and therefore find no merit in CCD's contention.
¶ 13 CCD's suggestion that the format of the Department's separate statement of facts made it difficult for CCD to identify the factual issues in dispute is likewise unsupported by the record. CCD's objections to the Department's statement of facts total 593 pages and reflect it had adequate opportunity and ability to address the statements contained therein and to act to protect its interests.
¶ 14 Moreover, the trial court has broad discretion in granting judgment regardless of the form of a party's response. Although the court may enter summary judgment against a party who does not properly oppose a motion, see Ariz. R. Civ. P. 56(e), so may the court "grant summary judgment for a nonmoving party; ... grant summary judgment on grounds not raised by a party; or ... consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute," Ariz. R. Civ. P. 56(f). In determining the appropriate disposition, the court is required to consider the portions of the record brought to its attention by the parties, regardless of their technical compliance with Rule 56(c). See Hunt v. Richardson , 216 Ariz. 114, 122 n.7, ¶ 25, 163 P.3d 1064, 1072 n.7 (App. 2007) (citing State ex rel. Corbin v. Sabel , 138 Ariz. 253, 256, 674 P.2d 316, 319 (App. 1983) ).
¶ 15 CCD has not proved reversal is warranted upon this ground. See Ariz. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").
B. CCD Abandoned Its Evidentiary Challenges.
¶ 16 CCD also argues the trial court abused its discretion in entering summary judgment without specifically ruling on CCD's objections to the Department's evidence. However, when the court entered final judgment in the Department's favor, the pending objections were deemed denied as a matter of law. See Dowling v. Stapley , 221 Ariz. 251, 264, ¶ 39, 211 P.3d 1235, 1248 (App. 2009). CCD waived appellate review of evidentiary rulings not specifically identified and argued within its opening brief. See Schabel v. Deer Valley Unified Sch. Dist. No. 97 , 186 Ariz. 161, 167, 920 P.2d 41, 47 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.") (citations omitted); see also MT Builders, L.L.C. v. Fisher Roofing, Inc. , 219 Ariz. 297, 304 n.7, ¶ 19, 197 P.3d 758, 765 n.7 (App. 2008) (deeming waived arguments raised "without any analysis"). The challenges CCD preserves for appeal are addressed herein.
C. The Applicable Statutes, Regulations, and Ordinances Contemplate a Two-Step Process of Establishing Zoning Compliance.
¶ 17 CCD argues the trial court erred in concluding the AMMA creates a two-step process for establishing zoning compliance. The interpretation of statutes and regulations presents a question of law we review de novo .
*985 Yavapai-Apache Nation v. Fabritz-Whitney , 227 Ariz. 499, 503, ¶ 13, 260 P.3d 299, 303 (App. 2011) (quoting Libra Grp., Inc. v. State , 167 Ariz. 176, 179, 805 P.2d 409, 412 (App. 1991) ). The basic principles of statutory interpretation are well-established:
If a statute is unambiguous, we apply its terms without resorting to other tools of statutory interpretation, unless doing so leads to impossible or absurd results. And when statutes relate to the same subject matter, we construe them together as though they constitute one law and attempt to reconcile them to give effect to all provisions involved.
Berndt v. Ariz. Dep't of Corrs. , 238 Ariz. 524, 528, ¶ 11, 363 P.3d 141, 144 (App. 2015) (quoting Fleming v. Dep't of Pub. Safety , 237 Ariz. 414, 417, ¶ 12, 352 P.3d 446, 449 (2015) ).
¶ 18 The two-step process derives from both statute and regulations. As relevant here, a dispensary is eligible for a dispensary registration certificate if it submits "a sworn statement" certifying that it is in compliance with local zoning restrictions. See A.R.S. § 36-2804(B)(1)(d). The Department interpreted this requirement within a corresponding regulation, which elaborates:
To apply for a dispensary registration certificate, an entity shall submit to the Department the following:
...
5. As required in A.R.S. § 36-2804(B)(1)(d), a sworn statement signed and dated by the [principal officers of the dispensary] certifying that the dispensary is in compliance with any local zoning restrictions; [and]
6. Documentation from the local jurisdiction where the dispensary's proposed physical address is located that:
a. There are no local zoning restrictions for the dispensary's location, or
b. The dispensary's location is in compliance with any local zoning restrictions.
A.A.C. R9-17-304(C)(5)-(6).
¶ 19 Following the issuance of a dispensary registration certificate, the holder must apply for approval to operate. A.A.C. R9-17-305. Relevant to issues in the immediate case, an application for operational approval must include:
2. A copy of documentation issued by the local jurisdiction to the dispensary authorizing occupancy of the building as a dispensary ... such as a certificate of occupancy, a special use permit, or a conditional use permit; [and]
3. A sworn statement signed and dated by the [principal officers of the dispensary] certifying that the dispensary is in compliance with local zoning restrictions.
A.A.C. R9-17-305(A)(2)-(3).
¶ 20 CCD argues these provisions require the same documentation be submitted twice-once when applying for a dispensary registration certificate and again when applying for approval to operate the dispensary. We disagree.
¶ 21 According to the plain language of the statutes and regulations, both the initial application for a dispensary registration certificate and the subsequent application for operational approval require a sworn statement of compliance signed and dated by the principal officers. A.A.C. R9-17-304(C)(5) and - 305(A)(3). The other requirements use different language and must be given independent meaning. See Williams v. Thude , 188 Ariz. 257, 259, 934 P.2d 1349, 1351 (1997) (directing statutes be construed so that "[e]ach word, phrase, clause, and sentence of a statute [is] given meaning so that no part will be void, inert, redundant, or trivial") (quoting City of Phx. v. Yates , 69 Ariz. 68, 72, 208 P.2d 1147 (1949) ) (emphasis omitted). Specifically, the application for a certificate-step one-requires documentation from the local jurisdiction that "[t]he dispensary's location is in compliance with any local zoning restrictions." A.A.C. R9-17-304(C)(6). The application to operate-step two-requires documentation from the local jurisdiction "authorizing occupancy of the building," such as a certificate of occupancy or CUP. A.A.C. R9-17-305(A)(2).
¶ 22 According to their plain language, the two regulations refer to two different types of documents. A document authorizing occupancy, such as a CUP, is not *986 required until the dispensary seeks operational approval following its selection. The statutes and regulations do not require the Department to reject the initial application for a dispensary registration certificate because it lacks a CUP. See White Mountain , 241 Ariz. at 234, ¶ 6, 386 P.3d at 420 ("Only upon [the Department's] allocation and issuance of a registration certificate may a proposed [medical marijuana dispensary then] apply to operate.") (citing A.A.C. R9-17-305(A) ).
¶ 23 Moreover, obtaining a CUP from the City requires, at a minimum: (1) the applicant prepare and submit engineering reports and professional drawings of the facility and surrounding area that detail the topography and electric and water access, (2) the applicant prepare and submit a detailed security plan, (3) the applicant and City analyze and report on community impact, and (4) the City provide public notices and conduct public hearings on the proposed use. Requiring multiple applicants to undergo the arduous process of obtaining a CUP before selection of the recipient of a dispensary registration certificate, simply as a matter of course and knowing that only one applicant will ultimately be awarded the certificate, would result in a waste of both the unsuccessful applicants' and the municipalities' resources. We will not advance an interpretation that leads to such an absurd result. See AEA Fed. Credit Union v. Yuma Funding, Inc. , 237 Ariz. 105, 109, ¶ 13, 346 P.3d 991, 995 (App. 2015) (citing State v. Affordable Bail Bonds , 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App. 2000) ).
¶ 24 Finally, while a municipality may choose to impose "something more" than required by the Department, the Winslow Municipal Code did not do so. The Code simply states that a non-profit medical marijuana dispensary is a permitted conditional use in a commercial zone "contingent on Arizona State licensure." See Winslow Municipal Code § 17.44.040(P), http://www.codepublishing.com/AZ/Winslow/. The Code further permits the City to take action against a CUP if the conditional use is not active. See Winslow Municipal Code § 17.68.020(E). The Code thus indicates that, under the City's municipal law, the need for a CUP is triggered only after the dispensary receives a dispensary registration certificate from the Department. The Winslow Municipal Code is therefore consistent with the two-step process outlined in the AMMA and adopted by the Department and imposes no additional requirements.
D. CCD Did Not Establish Any Genuine Issue of Material Fact Regarding the Nature of the Department's Actions.
¶ 25 CCD argues the evidence establishes the Department acted arbitrarily and capriciously in accepting TMR's application when it did not contain a CUP, and therefore, the trial court erred in granting summary judgment in favor of the Department. An agency acts arbitrarily and capriciously when it does not examine "the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. , 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (quoting Burlington Truck Lines v. United States , 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962) ).
¶ 26 Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a) ; Nat'l Bank of Ariz. v. Thruston , 218 Ariz. 112, 115, ¶ 14, 180 P.3d 977, 980 (App. 2008). "On appeal from a summary judgment, we must determine de novo whether there are any genuine issues of material fact and whether the trial court erred in applying the law." Airfreight Express Ltd. v. Evergreen Air Ctr., Inc. , 215 Ariz. 103, 110, ¶ 19, 158 P.3d 232, 239 (App. 2007) (quoting Bothell v. Two Point Acres, Inc. , 192 Ariz. 313, 316, ¶ 8, 965 P.2d 47, 50 (App. 1998) ). Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense."
*987 Orme Sch. v. Reeves , 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).
¶ 27 CCD argues the Department acted arbitrarily and capriciously in adopting the two-step process and accepting TMR's application because: (1) the Department's website contained information contradicting its stated position, and (2) the City Attorney supported a different interpretation.[6] Even assuming the circumstances alleged by CCD to be true, CCD does not establish a genuine issue of fact.
¶ 28 First, contrary to CCD's contentions otherwise, the Department's decision to accept TMR's application is consistent with the information contained in its website. At the time the motions were decided, the website provided:
An applicant does not need to submit a special or conditional use permit from a city or town with an application for a dispensary registration certificate. The applicant is required to submit documentation from a city or town that the proposed dispensary location complies with any zoning restrictions. A city or town may however require a special or conditional use permit for the proposed dispensary location before issuing documentation of compliance with local zoning restrictions.
This paragraph confirms the Department's position that a CUP need not be submitted with an application for a dispensary registration certificate. Although local ordinances may prescribe a different process, the Winslow Municipal Code does not. See supra ¶ 24.
¶ 29 Second, to the extent the City Attorney disagreed with the Department's interpretation, CCD has established only a difference of opinion between the various participants. "[W]here there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Petras v. Ariz. State Liquor Bd. , 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App. 1981) (quoting Tucson Public Schs., Dist. No. 1 v. Green , 17 Ariz.App. 91, 94, 495 P.2d 861 (1972) ). Moreover, "the advice of a c [i]ty attorney is just that: advice. It is not a dictate that supersedes the law." White Mountain , 241 Ariz. at 247, ¶ 58, 386 P.3d at 433. The correspondence in the record reflects the Department received and considered feedback from the City Attorney and engaged in an appropriate and informative discussion regarding his concerns. The Department ultimately reached a decision that, although different than the position espoused by the City Attorney, is supported by the language of the applicable statutes and regulations, as well as the Winslow Municipal Code. See supra Part I(C).
¶ 30 In sum, the Department's interpretation of the applicable statutes, regulations, and ordinances as promulgating a two-step process is logical, comports with their plain language, and, at the application stage, requires only a statement that the location complies, generally, with local zoning restrictions. The undisputed evidence indicates the City Attorney and Principal Planner both confirmed the location proposed in TMR's application was "in the commercial zone, and would be an appropriate location for a medical marijuana dispensary." Based upon this information, the City submitted a fully executed form documenting the compliance necessary to complete TMR's application. Although the City Attorney later advised the Department that TMR had not obtained a CUP, the Winslow Municipal Code does not require a dispensary to obtain a CUP before applying for a dispensary registration certificate. Further, CCD did not submit any proof supporting the notion that the Department *988 did not take a reasoned approach to its decision to accept TMR's application over the City Attorney's objection or that the Department applied the two-step process inconsistently among the applicants. Therefore, the trial court correctly granted summary judgment in the Department's favor.
E. TMR's Application was Otherwise Complete.
¶ 31 CCD alternatively argues the Department acted arbitrarily and capriciously in determining TMR's application was complete and including TMR in the lottery because TMR's application did not contain a sworn statement of zoning compliance.
¶ 32 As noted above, an application for a dispensary registration certificate must contain "a sworn statement signed and dated by the [principal officers of the dispensary] certifying that the dispensary is in compliance with any local zoning restrictions." A.A.C. R9-17-304(C)(5) ; see also A.R.S. § 36-2804(B)(1)(d). The relevant facts are undisputed; the parties agree TMR submitted with its application a signed, dated statement from its principal officers titled "Attestation in Lieu of a Sworn Statement" and reading:
I, Hugo [O.] and Abraham [B.], attest to the best of our knowledge, that we have met all City and State, Rules and Regulations regarding Prop 203 as well as in compliance with local zoning restrictions. All information is true and correct.
¶ 33 CCD argues a sworn statement must be made under oath or affirmation.[7] We agree. We disagree, however, with CCD's contention that the oath or affirmation must take a specific form. The most important aspect of the oath or affirmation, as made clear within our constitution, statutes, and rules, is that the person making the statement feel compelled to tell the truth. See Ariz. Const. art. 2, § 7 ("The mode of administering an oath, or affirmation, shall be such as shall be most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered."); A.R.S. § 12-2221(A) ("An oath or affirmation shall be administered in a manner which will best awaken the conscience and impress the mind of the person taking the oath or affirmation, and it shall be taken upon the penalty of perjury."); Ariz. R. Civ. P. 80(c) (stating an unsworn statement may "have the same force and effect" as a sworn written statement if "signed by the person as true under penalty of perjury") (previously Rule 80(i) ); Ariz. R. Evid. 603 (stating "an oath or affirmation to testify truthfully ... must be in a form designed to impress that duty on the witness's conscience").
¶ 34 As a matter of law, TMR's statement complies with that requirement. The document is titled an attestation and indicates the principal officers attest its contents are "true and correct." A person is subject to criminal prosecution for a false attestation, just as he would be for making a false statement under oath. See State v. Gear , 239 Ariz. 343, 344, ¶ 1, 372 P.3d 287, 288 (2016) (affirming the State's right to pursue prosecution of a physician "for falsely attesting that he reviewed a patient's medical records" in compliance with the AMMA). The language of TMR's sworn statement demonstrates the signatories' understanding that they are obligated to tell the truth. CCD has not presented any evidence suggesting otherwise.
¶ 35 CCD has not presented evidence upon which a reasonable jury could find the Department acted arbitrarily and capriciously in accepting the sworn statement of TMR's principal officers. The trial court did not err in granting summary judgment in the Department's favor on this ground.[8]
II. Sanctions
¶ 36 Within its cross-appeal, the Department argues the trial court erred in *989 denying its motion for sanctions against CCD and its counsel, either pursuant to Arizona Rule of Civil Procedure 11 or A.R.S. § 12-349(A).[9] "In general, an attorney violates Rule 11 by filing a document that he or she knows or should know asserts a position that 'is insubstantial, frivolous, groundless or otherwise unjustified.' " Cal X-Tra v. W.V.S.V. Holdings, L.L.C. , 229 Ariz. 377, 410, ¶ 113, 276 P.3d 11, 44 (App. 2012) (quoting James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot. , 177 Ariz. 316, 319, 868 P.2d 329, 332 (App. 1993) ). Sanctions may also be imposed against a party who brings or defends a claim without substantial justification or solely for the purpose of delay or harassment or engages in an abuse of discovery. A.R.S. § 12-349(A). We review an order denying Rule 11 sanctions for an abuse of discretion, Cal X-Tra , 229 Ariz. at 410, ¶ 113, 276 P.3d at 44 (citing James , 177 Ariz. at 320, 868 P.2d at 333 ), and the application of A.R.S. § 12-349de novo , City of Casa Grande v. Ariz. Water Co. , 199 Ariz. 547, 555, ¶ 27, 20 P.3d 590, 598 (App. 2001) (citations omitted). In doing so, we accept the court's factual findings unless clearly erroneous. Id. (citing Phx. Newspapers, Inc. v. Dep't of Corrs. , 188 Ariz. 237, 243, 934 P.2d 801, 807 (App. 1997) ). We are further mindful that "[c]ourts should not impose sanctions lightly." Estate of Craig v. Hansgen , 174 Ariz. 228, 239, 848 P.2d 313, 324 (App. 1992) (citing Johnson v. Brimlow , 164 Ariz. 218, 222, 791 P.2d 1101, 1105 (App. 1990) ).
¶ 37 After considering the arguments and evidence presented in the summary judgment proceedings, the trial court determined CCD's allegations were "unfounded and without any factual support." The Department argues this finding mandates an award of sanctions. We disagree. The mere fact that a party is ultimately unable to sustain its claims in defense of a motion for summary judgment does not automatically equate to a determination that the complaint itself was frivolous, unjustified, or put forth for an improper purpose. See Johnson v. Mohave Cty. , 206 Ariz. 330, 335, ¶ 19, 78 P.3d 1051, 1056 (App. 2003) (" Section 12-349 does not provide a basis for an award of attorneys' fees against a party whose unsuccessful claim was ... nonetheless fairly debatable.") (citing Casa Grande , 199 Ariz. at 556, ¶ 30, 20 P.3d at 599 ).
¶ 38 Indeed, here, the trial court specifically rejected the Department's motion for sanctions after it "d[id] not find that CCD and Counsel have violated Rule 11... or A.R.S. [§] 12-349," and "d[id] not find that [CCD's motion for summary judgment] was filed with the intent to harass the Department, increase the cost of litigation in this matter or with the intent of unreasonabl[y] expanding or delaying these proceedings." The Department argues these findings are erroneous, and sanctions were warranted, because the record reflects: (1) the City Attorney eventually accepted the Department's interpretation; (2) CCD filed its complaint knowing the Department did not require a CUP be submitted with the application for a dispensary registration certificate; (3) CCD maintained its claims against the Department even after learning GCM's application was not included in the lottery for reasons unrelated to zoning; and (4) CCD opposed the Department's efforts to obtain permission to release confidential information regarding GCM's, TMR's, and CCD's applications in an attempt to "keep CCD's lies and deception concealed."
¶ 39 In advancing this position as to the first three points, the Department misconstrues CCD's argument. CCD's claims, though perhaps inartfully presented, center around its understanding that a municipality may require something more from applicants than what is minimally required by state statutes and regulations before issuing a statement of zoning compliance. CCD asserted the City is a municipality that requires *990 "something more" and supported that claim with a sworn statement of the City Attorney. Although its position that the Department acted arbitrarily in determining otherwise was ultimately unsuccessful, we cannot say the claim was entirely frivolous where resolution of the issue involved interpretation of a newly enacted and previously unchallenged law. Nor can we say CCD acted in a wholly unreasonable fashion in adopting the opinion of the City Attorney, a licensed professional tasked with representing the City's interests.[10]
¶ 40 The Department's fourth point is likewise unsupported by the record. The Department indeed filed a motion for leave to disclose certain documents relating to GCM's, TMR's, and CCD's applications for a dispensary registration certificate, otherwise protected from disclosure pursuant to A.R.S. § 36-2810(A). But CCD did not make any "strenuous objections" to the disclosure; rather, CCD argued the trial court should order disclosure of all relevant and discoverable documents, rather than "cherry pick[ ] documents that they think will benefit their case." In doing so, CCD presented valid concerns regarding the fairness and utility of releasing the information and did not act unreasonably.
¶ 41 The trial court's factual findings are supported by the record and support the conclusion that sanctions were not warranted. On this record, we find no error in the order denying sanctions.
CONCLUSION
¶ 42 The trial court's orders are affirmed.
¶ 43 Both parties request attorneys' fees and costs be awarded against the other as a sanction pursuant to A.R.S. § 12-349 and ARCAP 25. Neither party has proved the other's filings were frivolous or filed for an improper purpose, and we deny both requests.
¶ 44 CCD also requests its attorneys' fees and costs incurred on appeal pursuant to A.R.S. § 12-348 (authorizing an award of fees and expenses to a party who prevails in certain actions against the state). Because we conclude neither party prevailed on appeal, CCD's request is denied, and we decline to award either party costs pursuant to A.R.S. § 12-341.

"On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." City of Tempe v. State , 237 Ariz. 360, 362 n.3, ¶ 1, 351 P.3d 367, 369 n.3 (App. 2015) (quoting Bothell v. Two Point Acres, Inc. , 192 Ariz. 313, 315, ¶ 2, 965 P.2d 47, 49 (App. 1998) ).

Absent material changes from the relevant date, we cite the current version of statutes, regulations, and rules.

After the Department allocated all initial dispensary registration certificates, this section was no longer necessary and was repealed effective December 2012. 18 Ariz. Admin. Reg. 3354 (Dec. 5, 2012), http://apps.azsos.gov/public_services/register/2012/52/final.pdf. The Department remains obligated to "review current valid dispensary registration certificates to determine if the Department may issue additional dispensary registration certificates pursuant to A.R.S. § 35-2804(C)." A.A.C. R9-17-303.

In a prior appeal, this Court determined the allegations of CCD's complaint were sufficient to state a claim for relief and reversed a prior dismissal. See CCD v. Ariz. Dept. Health Servs. , 1 CA-CV 13-0133, 2015 WL 1395271, at *1, ¶ 1 (Ariz. App. Mar. 24, 2015) (mem. decision).

CCD also suggests the Department acted unreasonably in response to a letter from TMR threatening legal action if TMR were not included in the lottery. However, CCD did not raise this argument to the trial court and also objects to our consideration of this letter, which it contends lacks foundation and contains inadmissible hearsay. Accordingly, the intimidation argument has not been preserved and we will not address arguments raised for the first time on appeal. See Dawson v. Withycombe , 216 Ariz. 84, 106, ¶ 67, 163 P.3d 1034, 1056 (App. 2007) (citing McDowell Mountain Ranch Land Coal. v. Vizcaino , 190 Ariz. 1, 5, 945 P.2d 312, 316 (1997) ). Because we do not address the newly raised substantive argument, we need not resolve the evidentiary argument.

The terms oath and affirmation are largely interchangeable. See Ariz. R. Civ. P. 43(b) ("When these rules require an oath, a solemn affirmation suffices."). The term affirmation simply removes the religious connotation that might attach to the term "oath." State v. Albe , 10 Ariz.App. 545, 549-50, 460 P.2d 651 (1969).

Because we conclude summary judgment was properly granted to the Department, we need not and do not address the Department's argument that CCD lacked standing to contest TMR's inclusion in the lottery, nor CCD's arguments that the Department's evidence to support that claim was inadmissible.

CCD's counsel did not file an answering brief on its own behalf. When debatable issues exist and a party fails to file an answering brief, we may consider such failure a confession of reversible error. See United Bonding Ins. v. Thomas J. Grosso Inv., Inc. , 4 Ariz.App. 285, 285, 419 P.2d 546 (1966) (citations omitted). However, we are not required to do so, and, in our discretion, we address the merits of the Department's cross-appeal as to all interested parties. See Nydam v. Crawford , 181 Ariz. 101, 101, 887 P.2d 631, 631 (App. 1994) (expressing reluctance to reverse upon an "implied confession of error" where the trial court correctly applied the law).

Contrary to the Department's contention otherwise, the City Attorney continued to disagree with the Department's interpretation long after the lottery was held and the litigation commenced.